IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALAN NICHOLAS WEISBROT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOCIAL SECURITY ADMINISTRATION, )<br>)<br>Defendant. ) | No. 3:15-cv-00581<br>Senior Judge Haynes |

**MEMORANDUM**

Plaintiff, Alan Nicholas Weisbrot, filed this civil action under 42 U.S.C. §§ 405(g) and 1383(c) against the Defendant Social Security Administration, seeking judicial review of the Defendant's final decision denying Plaintiff's applications for disability benefits and supplemental security income. Plaintiff filed his applications for benefits on June 25, 2010, asserting a disability onset as of October 3, 2008 that was subsequently amended to August 30, 2010. For his disability, Plaintiff cited a compressed disc in his lower back and anxiety attacks. (Docket Entry No. 10, Administrative Record, at 196). Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested a de novo hearing and after an evidentiary hearing, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled under the Act. Id. at 14-28. In essence, the ALJ found the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

\* \* \*

2. The claimant has not engaged in substantial gainful activity since August 30, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

\* \* \*

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and anxiety (20 CFR 404.1520(c)).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can no more than frequently climb ramps, ropes, ladders, scaffolds, or stairs. He can no more than frequently balance, stoop, kneel, crouch, or crawl. He is able to understand, remember, and carry out multistep directions. He can maintain concentration, persistence, and pace for such tasks in 2-hour intervals with normal breaks spread throughout the day.

* * *

6. The claimant is capable of performing past relevant work as a factory helper, lot attendant, cook helper, sales attendant, and landscape specialist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

* * *

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 3, 2008, through the date of this decision (20 CFR 404.1520(f)).

Id. at 17-18, 20-22, 27-28. On March 19, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Id. at 1-3.

Before the Court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) contending, in essence: (1) that the ALJ erroneously rejected the opinion of Plaintiff's treating physician; (2) that the ALJ improperly deferred to the opinions of non-treating physicians;

(3) that the ALJ failed to consider all of Plaintiff's impairments; and (4) that the ALJ failed to perform a complete function-by-function assessment in determining Plaintiff's residual functional capacity. In response (Docket Entry No. 16), the Defendant argues that the ALJ properly evaluated all physicians' opinions and evaluated Plaintiff's impairments. The Defendant contends that the ALJ's functional assessment complied with the Act.

## A. Review of the Record

For the issues in this action, the Administrative Record reflects that Plaintiff's past relevant work was a factory helper, lot attendant, cook helper, sales attendant, and landscape specialist. (Docket Entry No. 10, Administrative Record, at 27). As to his medical history, in 2007, Plaintiff had a complete series of lumbar spine x-rays that did not reveal any evidence of fracture, dislocation, spondylolisthesis, or spondylolysis, but revealed a limited flexion. Id. at 23, 302. At that time, Plaintiff also had negative straight-leg-raise test, and his doctor's treatment notes explicitly stated that Plaintiff could "perform all activities of daily living without assistance." Id. at 23, 304-05.

On October 13, 2007, Plaintiff underwent an MRI of his lumbar spine that showed significant disc degeneration at L5-S1 with left paracentral disc protrusion superimposed upon diffuse bulge leading to moderate left lateral recess stenosis abutting and displacing the descending S1 nerve root; disc material abuts the exiting L5 nerve roots' large annular tear; and annular tears at L3 and L4-5 with disc osseous degenerative change leading to mild stenosis. Id. at 307-08.

Records show that Dr. David Luck has treated Plaintiff for lumbar pain; anxiety; cervical pain; and umbilical hernia. Physical examinations of Plaintiff have revealed lumbar tenderness and muscle spasms. Id. at 344, 348, 350. On May 4, 2013, Plaintiff went to the emergency room complaining of back pain with sciatica. An x-ray of his lumbar spine revealed a disc height loss at

L5-S1 and mild facet arthrosis. Id. at 535, 539.

Plaintiff also received treatment for panic disorder, depressive disorder, and alcohol dependence. Id. at 396, 404. Plaintiff's GAF score is 50. Id. at 408-09. Cumberland Mental Health Center records show assessments of panic disorder, agoraphobia, depressive disorder, and alcohol dependence. Id. at 408.

On August 30, 2010, Dr. Roy Johnson, a consultant, examined Plaintiff and determined that Plaintiff could stand or walk at least two hours, sit with normal breaks less than six hours and occasionally lift and carry 10 pounds. Id. at 311-12. Dr. Johnson also limited Plaintiff to whatever other restrictions that his treating physician imposed. Id. at 314. In September 2010, Dr. Denise Bell, M.D., a non-examining consultant, reviewed Plaintiff's medical records. Id. at 334-42. Dr. Bell cited Plaintiff's normal range of motion, negative straight-leg-raise results, normal gait, and absence of strength deficits. Id. at 340, 342. On March 26, 2011, Dr. Kanika Chaudhuri, another non-examining consultant, agreed with Dr. Bell's opinion. Id. at 26, 371-79.

In November 2010, Dr. Luck completed a source statement in which he opined that Plaintiff could lift less than ten pounds on an occasional basis and less than five pounds frequently; sit for less than four hours during an eight-hour workday, and for no more than one hour at a time; and never climb, balance, stoop, crouch, kneel, or crawl. Id. at 22, 437-40. The checklist form also asked Dr. Luck to specify his "clinical findings," including "diagnosis, prescribed treatment and response, expected duration and prognosis." Id. at 437.

In April 2011, Dr. P. Jeffrey Wright reviewed Plaintiff's file and opined that Plaintiff did not have any limitations in his daily activities, but was mildly limited to his social functioning. Id. at 42. In Dr. Wright's opinion, Plaintiff had moderate difficulties maintaining concentration,

persistence, or pace; and never had an extended episode of decompensation. Id. at 27, 421.

By letter dated January 31, 2014, Dr. Luck supported Plaintiff's claim for benefits stating that Plaintiff is unable to work. Id. at 10, 429.

In June 2013, Dr. Luck completed two statements on Plaintiff's physical and mental conditions. Id. at 24-26, 566-71. As to his physical condition, Dr. Luck opined that Plaintiff could lift ten pounds occassionally, and less than ten pounds frequently; could stand and walk for about two hours, and sit for four hours in an eight-hour day; and would need to miss work more than four days wach month. Id. at 25, 566-68. Dr. Luck opined that Plaintiff must "walk around" every 15 minutes, for 45 minutes each time. Id. at 25, 566. For his opinions, Dr. Luck cited his physical examinations and Plaintiff's 2007 MRI test. Id. at 25, 566-67.

On February 21, 2012, Dr. Luck stated Plaintiff was "unable to work" due to his disc degeneration, anxiety, and depression. Id. at 10, 429.

As to Plaintiff's mental condition, Dr. Luck opined that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; make judgments on simple work-related decisions; interact appropriately with supervisors and co-workers; and respond appropriately to work pressures and changes in a routine work setting. Id. at 24, 26, 269-70. For these opinions, Dr. Luck explained that Plaintiff worked alone because he could not handle being told what to do. Id. at 24, 570. Dr. Luck also noted that Plaintiff's mental impairment affected "other capabilities," but he did not identify them or their effects. Id. at 570.

Dr. Linda Blazina, Ph.D., a psychologist, found that Plaintiff did not face disabling psychological impairment. Id. at 315-18. Dr. Blazina opined that Plaintiff's abilities to understand and remember, to maintain his concentration and attention, and to engage in social interaction, were

5

not noticeably impaired. Id. at 318. Dr. Blazina found mild impairment in Plaintiff's ability to adapt to changes in work routine and tolerate workplace stress. Id.

## B. Conclusions of Law

The Social Security Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). A reviewing court's evaluation of the Commissioner's decision is based upon the entire record in the administrative hearing process. Jones v. Sec'y, Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). Judicial review is limited to a determination of whether substantial evidence exists in the record to support the Commissioner's decision, and whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y of Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the ALJ's decision must stand, if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Plaintiff first challenges the ALJ's rejection of the opinion of Dr. Luck, Plaintiff's treating physician who opined that Plaintiff is unable to meet the demands of full-time work due to lumbar disc degeneration, citing the October 2007 MRI of Plaintiff's lumbar spine. The ALJ rejected Dr.

6

Luck's opinion, citing the 2007 MRI that "in fact only show[ed] mild degrees of stenosis" rather than the moderate stenosis which was attributed to it by Dr. Luck. Plaintiff insists this MRI shows "moderate left lateral recess stenosis" and disputes the ALJ's characterization of Plaintiff's stenosis.

Upon review, the 2007 MRI report includes the radiologist's ultimate impression of "moderate left lateral recess stenosis abutting and displacing the descending S1 nerve root," that "combines with facet degenerative hypertrophy to create mild bilateral foraminal stenosis" at the L5-S1 level. (Docket Entry No. 10, Administrative Record, at 308). The findings of stenosis at the L3-L4 and L4-L5 levels of Plaintiff's lumbar spine were "mild." Id. at 307-08. Yet, the ALJ expressed additional reasons for discounting Dr. Luck's opinions, including Dr. Luck's lack of objective findings in his treatment notes for his restrictive limitations. A May 2013 x-ray of Plaintiff's spine revealed "only mild disc height loss at L5-S1 and mild facet arthrosis." Id. at 23, 539. The ALJ also noted Dr. Luck's lack of specialization. Id. at 23. In addition, Plaintiff actually worked in 2008. Id. at 25. In 2011, Plaintiff could load a van, take a lawn mower off a trailer, detail and paint cars, plant trees, and carry heavy doors as well as other manual labor. Id. at 17, 19.

A treating physician's opinion is not entitled to "controlling weight" if that opinion is not supported by accepted clinical and laboratory diagnostic techniques and is not supported by substantial evidence. To be sure, the ALJ must weigh the opinion in light of factors including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician," giving good reasons for the weight assigned to the opinion. Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir.2009). Here, the ALJ had substantial evidence to not give controlling weight to Dr. Luck's opinions and provided

good reasons for his determination.

As for the ALJ's deference to the consultants' opinions, non-examining state agency consultants are experts in evaluating disability claims under the Act's regulations, see Potts v. Astrue, No. 3:07-cv-1284, 2009 WL 2168731, at **5-6 (M.D. Tenn. July 17, 2009), and their opinions may be given greater weight than those of examining sources in proper cases, where supported by an adequate explanation. See Norris v. Comm'r of Soc. Sec., 461 F.App'x 433, 440 ("While perhaps the ALJ could have provided greater detail, particularly as to why the nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of nontreating versus nonexamining sources. So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review."). Given the evidence that undermined Dr. Luck's opinion, the ALJ could properly rely upon the consultants' opinions, their treatment notes, as well as the absence of significant clinical findings. The reports of Dr. Johnson and Dr. Blazina, a psychologist who examined Plaintiff, are consistent with the opinions of the non-examining consultants than Dr. Luck. (Docket Entry No. 10, Administrative Record, at 17, 22-23, 25-26).

Plaintiff next argues that the ALJ erred by failing to consider properly all of his impairments at the second step of the sequential evaluation process, and by the ALJ's failure to explain adequately the reasoning why certain impairments, such as sciatica, were not identified as severe. The Act's regulations do not require that all diagnosed impairments must be scrutinized for their severity. Even an erroneous finding of impairment to be non-severe is not reversible error, so long as at least one severe impairment is identified and the sequential evaluation continues. See Maziarz v. Sec'y of

Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). A claimant's residual functional capacity is determined in view of the combined effects of all medically determinable impairments, severe and non-severe. The fact that some of Plaintiff's diagnosed impairments went unmentioned at the step two severity determination is "legally irrelevant." Anthony v. Astrue, 266 F.App'x 451, 457 (6th Cir. 2008). Sciatica was a one-time diagnosis and would be fairly encompassed in the consideration of Plaintiff's pain symptoms and severe lumbar degenerative disc disease.

Plaintiff's next claim is the ALJ erred in failing to include an explicit function-by-function assessment vis-à-vis the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling) in her determination of Plaintiff's RFC, as required by Social Security Ruling ("SSR") 96-8p. As to this issue, the Sixth Circuit stated:

> In Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000), the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." Bencivengo, slip op. at 4. The Third Circuit distinguished between what an ALJ must consider and what an ALJ must discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." Bencivengo, slip op. at 5.

Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. 2002).

Here, the ALJ addressed Plaintiff's exertional and non-exertional capabilities, making reference to the evidence that supports her conclusions. In addition, given evidence of Plaintiff's actual work after the 2007 MRI, Plaintiff has failed to identify any particular evidence supporting an impairment of physical function which was not considered. The Court concludes that the ALJ's RFC determination reflects adequate consideration of Plaintiff's functional abilities, and complied with SSR 96-8p. See, e.g., Rudd v. Comm'r of Soc. Sec., 531 F.App'x 719, 729 (6th Cir. 2013).

For these reasons, the Court concludes that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) should be denied and that the decision of the SSA be affirmed.

An appropriate Order is filed herewith.

**ENTERED** this 27th day of September, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge